**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

PHILIP F. FISHER,

          Petitioner,

    v.

WARDEN, FCI JESUP,

          Respondent.

CIVIL ACTION NO.: 2:24-cv-122

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Philip Fisher ("Fisher"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus and an Amended Petition. Docs. 1, 15. Respondent filed a Motion to Dismiss Fisher's Amended Petition, and Fisher filed a Response. Docs. 17, 19. For the following reasons, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss and **DISMISS without prejudice** Fisher's Second Chance Act claims based on his failure to exhaust his administrative remedies. If the Court adopts this Report and Recommendation, the parties should be prepared to submit their Answer to the Petition and Reply addressing Fisher's First Step Act claims. A schedule for those filings will be issued after the Court has considered this Report and Recommendation.

## BACKGROUND

Fisher was convicted in the District Court for the Middle District of Florida of using interstate commerce facilities in the commission of a murder-for-hire, in violation of 18 U.S.C.

§ 1958.  Doc. 17-1 at 6.  Fisher was sentenced to 120 months in prison.  Fisher has a statutory

release date of May 13, 2028, via good conduct release, and a projected release date of May 14,

2027, via First Step Act ("FSA") release.  Id.  Fisher also has a home detention or residential

reentry center eligibility date of November 13, 2026.  Id.

In his Amended Petition, Fisher asserts that the Bureau of Prisons ("BOP") has not

properly credited his sentence under the FSA, resulting in a later placement in pre-release

custody.  Doc. 15 at 6.  Fisher also asserts that his case manager took away his time credits under

the Second Chance Act as retaliation for Fisher's complaints about his FSA credits.  Id. at 7, 8.

Fisher asks the Court to apply his earned FSA credits and set him for placement in a residential

re-entry program and to order the BOP re-apply his Second Chance Act credits.  Id. at 8.

Respondent asks this Court to dismiss Fisher's Amended Petition because Fisher failed to

exhaust his administrative remedies regarding the claims he raises in this Petition and Fisher is

not entitled to designate his place of confinement.  Doc. 17 at 2.  In addition, Respondent

contends that the Court lacks jurisdiction under the Administrative Procedures Act to review

Fisher's FSA claim and nothing in the Second Chance Act alters the BOP's discretion as to

prisoner placement.  Id. at 6, 13.

**DISCUSSION**

**I.     Fisher Exhausted His Available Administrative Remedies on His FSA Claims, But
        Not His Second Chance Act Claims**

Respondent asserts that Fisher concedes he did not fully exhaust his administrative

remedies, given that Fisher acknowledges he did not appeal the denial of his remedies request to

the Office of General Counsel.  Doc. 17 at 4 (citing Doc. 15 at 3–4).  Respondent alleges that,

although Fisher continued to seek relief through the administrative remedies process *after* filing

his original Petition, he still does not satisfy the exhaustion requirements for his FSA claims.

Respondent argues that Fisher has not even started the administrative remedies process for his Second Chance Act claims.  Id. at 4–5.

Fisher concedes that he has not exhausted his administrative remedies but contends he was not required to do so.  Fisher states he filed an appeal at the Regional Office level, but he had not received a response at the time he filed his Petition, even though the time limit had passed.  Doc. 15 at 11.  Fisher maintains he tried to get a form to appeal to the Office of General Counsel but was denied this form.  In addition, Fisher states his administrative remedies, through the BP-10 level, were all denied based on Program Statement 5410.01 and that the BOP continually relies on this Program Statement to deny inmates their full earned credits and the BOP's reliance on the Statement makes administrative remedies a dead end.  Doc. 19 at 2, 3.

Liberally construing Fisher's submissions, it appears that Fisher is arguing that he should be excused from exhausting administrative remedies for two reasons.  First, Fisher argues that that he filed an informal request (BP-8), a formal request to the Warden (BP-9), and an appeal to the Regional Director (BP-10), but he was denied access to form to appeal to the Office of General Counsel (BP-11) when he tried to get one.  Doc. 15 at 11.  Second, Fisher argues that the BOP "consistently use[s] Program Statement 5410.01 as a dead end[.]"  Doc. 19 at 3.  The Court addresses each argument.

## A.    Generally, a Petitioner Must Fully Exhaust All Available Administrative Remedies Before Filing a § 2241 Petition

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the

3

requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'" Fleming, 631 F. App'x at 842 (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors."  Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The United States Supreme Court has noted exhaustion must be "proper."  Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).

The Eleventh Circuit has explained—though only in an unpublished opinion—that a § 2241 petitioner need only exhaust "available" administrative remedies.  Blevins v. FCI

---

[1]      Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits."  Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus, exhaustion requirements are applicable to habeas petitions.

Hazelton Warden, 819 F. App'x 853, 856 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632

(2016).  As a result, a petitioner need not exhaust administrative remedies:

> (1) where despite what regulations or guidance materials may promise, the
> administrative process operates as a simple dead end—with officers unable or
> consistently unwilling to provide any relief to aggrieved inmates, (2) where the
> administrative process is "so opaque that it becomes, practically speaking,
> incapable of use" because "no ordinary prisoner can discern or navigate it, and (3)
> where prison administrators thwart inmates from taking advantage of a grievance
> process through machination, misrepresentation, or intimidation.

Id. (cleaned up); see also Parra-Orona v. Jenkins, No. 1:23-CV-2434, 2024 WL 6083897, at *2

(N.D. Ga. Jan. 16, 2024) (citing Blevins and evaluating the unavailability of administrative

remedies in the § 2241 context), adopted by, 2024 WL 6083898 (N.D. Ga. Mar. 26, 2024);

Ridling v. Yeager, No. 1:24-CV-01785, 2025 WL 1892707, at *3 (N.D. Ala. June 13, 2025)

(same), adopted by, 2025 WL 1885636 (N.D. Ala. July 8, 2025).

    Although a petitioner must ordinarily exhaust administrative remedies before filing a

§ 2241 petition, there are some circumstances where exhaustion may be excused.  In McCarthy

v. Madigan, the Supreme Court recognized "three broad sets of circumstances" that may justify

excusing a claimant from exhausting administrative remedies: (1) when "requiring resort to the

administrative remedy may occasion undue prejudice to subsequent assertion of a court action";

(2) when there is "some doubt as to whether the agency was empowered to grant effective

relief"; and (3) when "the administrative body is shown to be biased or has otherwise

predetermined the issue before it . . . ."  503 U.S. 140, 146–48 (1992) (internal quotation marks

omitted), superseded by statute, 42 U.S.C. § 1997e(a).  The Eleventh Circuit has not spoken

directly on whether exhaustion can be excused in the § 2241 context under the three McCarthy

circumstances, but in an unpublished opinion, has suggested it can be.  See Shorter v. Warden,

803 F. App'x 332, 336 (11th Cir. 2020) (suggesting McCarthy should be applied to § 2241

petitions).  District courts in this Circuit have similarly applied McCarthy in the § 2241 context.

See, e.g., Wilson v. Sawyer, No. 4:20-CV-00326, 2020 WL 7346550, at *2 (N.D. Fla. Nov. 13, 2020), adopted by, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *1 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

There is some uncertainty about whether there is a "futility" exception to the exhaustion requirement for § 2241 petitioners.  See Zapata-Molina v. Stone, No. CV 321-013, 2021 WL 2670725, at *2 (S.D. Ga. June 1, 2021) (noting it is unclear whether a futility exception exists in the § 2241 context), adopted by, 2021 WL 2673670 (S.D. Ga. June 29, 2021).  McCarthy itself suggests that the second and third circumstances identified in that case encompass futility. See McCarthy, 503 U.S. at 148 (noting that where an agency is not empowered to grant effective relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies that would present same challenge to the same decisionmaker would be a "futile act").  Additionally, in Shorter, the Eleventh Circuit suggested that the petitioner's futility argument related to one of the three McCarthy circumstances.  803 F. App'x 336.  District courts applying McCarthy have also recognized that the McCarthy circumstances case likely encompass some futility exception. See, e.g., Jones v. Zenk, 495 F. Supp. 2d 1289, 1299–1300 (N.D. Ga. 2007) ("[T]he exceptions recognized in McCarthy, including the futility exception, apply to the exhaustion requirement in § 2241 cases."); Robelo-Galo, 2025 WL 2093409, at *2.

Thus, to the extent a petitioner demonstrates futility by showing the existence of one of the three circumstances described in McCarthy, a court may excuse the exhaustion requirement. There does not, however, appear to be any separate, independent futility exception, outside of the

three <u>McCarthy</u> circumstances.[2]  Where a petitioner relies on futility, the petitioner has the

burden to demonstrate futility and "extraordinary circumstances."  <u>Jaimes v. United States</u>, 168

F. App'x 356, 359 & n.4 (11th Cir. 2006).

> **B.    Legal Framework for Evaluating a Motion to Dismiss for Failure to Exhaust Administrative Remedies**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional

defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of

action.  <u>Bryant</u>, 530 F.3d at 1374 (internal punctuation and citation omitted).  Further, a judge

"may resolve factual questions" in instances where exhaustion of administrative remedies is a

defense before the court.  <u>Id.</u>  In these instances, "it is proper for a judge to consider facts outside

of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the

merits and the parties have sufficient opportunity to develop a record."  <u>Id.</u> at 1376.

A respondent may raise an inmate-petitioner's failure to exhaust as an affirmative

defense.  <u>See</u> <u>Jones</u>, 549 U.S. at 216; <u>Pearson v. Taylor</u>, 665 F. App'x 858, 867 (11th Cir. 2016);

<u>Whatley I</u>, 802 F.3d at 1209.  When so raised, "[respondents] bear the burden of proving that the

[petitioner] failed to exhaust his administrative remedies."  <u>Pearson</u>, 665 F. App'x at 867

(quoting <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008)); <u>see also</u> <u>Trevari v. Robert</u>

---

[2]    In <u>McGee v. Warden, FDC Miami</u>, the Eleventh Circuit expressly concluded that there is no futility exception to the exhaustion requirement for § 2241 petitions.  487 F. App'x 516, 518 (11th Cir. 2012).  However, that conclusion was based on a view that exhaustion was a jurisdictional requirement, which was later rejected.  Therefore, the conclusion about a futility requirement expressed in <u>McGee</u> is likely no longer correct.  <u>See</u> <u>Straughter v. Warden, FCC Coleman-Low</u>, 699 F. Supp. 3d 1304, 1308 (M.D. Fla. 2023) (explaining that the conclusion in <u>McGee</u> likely did not survive <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467, 474 (11th Cir. 2015)).

Some courts have continued to state there is no futility exception to the exhaustion requirement for § 2241 petitioners.  <u>See, e.g.</u>, <u>Martinez-Palmero v. Jenkins</u>, No. 1:23-CV-2763, 2023 WL 12119160, at *2 (N.D. Ga. Nov. 17, 2023), <u>adopted by</u>, 2024 WL 6081629 (N.D. Ga. Feb. 27, 2024); <u>Moore v. Colon</u>, No. 20-22032, 2020 WL 5868179, at *4 (S.D. Fla. July 27, 2020), <u>adopted by</u>, 2020 WL 5848687 (S.D. Fla. Sept. 30, 2020).  However, that view appears to be largely based on the language in <u>McGee</u>, which, after <u>Santiago-Lupo</u>, is likely no longer binding.

A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir.

2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

     In Turner, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss

for failure to exhaust administrative remedies.[3]  541 F.3d at 1082.  First, courts "look[] to the

factual allegations in the [respondent's] motion to dismiss and those in the [petitioner's]

response, and if they conflict, takes the [petitioner's] version of the facts as true."  Id.; see also

Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018).

This prong of the Turner test assesses whether there is a genuine dispute of material fact

regarding the [petitioner's] failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th

Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should

dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759

F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process

is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

     "If the complaint is not subject to dismissal at the first step, where the [petitioner's]

allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the

factual disputes, the court then decides whether, "based on those findings, [respondent has]

shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

---

[3]     Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition); Blevins v. FCI Hazelton Warden, 819 F. App'x at 856 (11th Cir. 2020) (applying Turner in the § 2241 context).

1209).  Once respondents have shown an administrative remedies procedure exists and the petitioner did not follow the procedure, the petitioner "bears the burden of proving the . . . procedure effectively was unavailable to him."  Nuckles v. Yeager, Case No. 1:25-cv-00125, 2025 WL 1490057, at *4 (N.D. Ala. May 22, 2025) (referencing Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020)).

Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").  However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate.  Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025).

C.    The BOP's Administrative Remedies Procedures

The BOP has established an administrative remedy procedure through which an inmate may seek review of an issue related to any aspect of his imprisonment.  28 C.F.R. § 542.10 et seq.  The Administrative Remedy Program applies to all inmates incarcerated in penal institutions the BOP operates.  Id. § 542.10(b).  Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff at the local facility ("BP-8").  Id. § 542.13(a).  If this does not resolve the matter, an inmate must submit a formal written administrative remedy request to the Warden

("BP-9") within 20 calendar days of the incident giving rise to the administrative remedy request.  Id. § 542.14(a).  If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response.  Id. § 542.15(a).  If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Central Office, Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response.  Id.  Appeal to the BOP's Central Office is the final step in the BOP's administrative remedy process.  Id.

An inmate must complete all the steps in the administrative remedies process to have exhausted his administrative remedies.  A submission at any of these levels can be rejected, with notice to the inmate why the submission was rejected and, if correctable, to allow the inmate a reasonable time for re-submission.  Id. § 542.17(b).  Additionally, if an inmate does not receive a response within the allotted time for response at any level, including any extensions, the inmate is to consider the lack of a response to be a denial at that level.  Id. § 542.18.  The BOP uses a system known as "SENTRY to log and track inmate [remedies requests] as they progress through the administrative remedy process."  Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

**D.    Analysis of Fisher's Efforts at Exhaustion**

*1.    Fisher made no effort to exhaust his Second Chance Act claims.*

As noted above, Fisher brings claims based on the Second Chance Act and the FSA. Fisher's Second Chance Act claim is due to be dismissed for failure to exhaust.

The BOP records show that Fisher did not even attempt to begin the administrative remedy process for his Second Chance Act claims.  Doc. 17-1.  Fisher does not address his failure to exhaust the Second Chance Act claim in response to the Motion to Dismiss.  Instead, Fisher contends that he did not have access to a BP-11 form to appeal the denial of his FSA

ssfsxx

remedies request, and he contends that the administrative remedies process is a "dead end" because of the BOP's interpretation of Program Statement 5410.01, which relates to the implementation of the FSA. Neither of those arguments relate to Fisher's failure to exhaust administrative remedies related to his Second Chance Act claim.

In sum, Fisher made no effort to begin the administrative remedies process for his Second Chance claim, and he makes no discernible argument as to why he was not required to exhaust administrative remedies related to that claim. Therefore, Fisher's Second Chance Act claim should be dismissed because Fisher failed to exhaust administrative remedies for that claim.

### 2. Respondent has not shown that Fisher failed to exhaust available administrative remedies for his FSA claims.

Respondent contends that Fisher filed two administrative remedies requests related to his FSA claims, which "represent attempts to exhaust at the BP-9 and BP-10 levels." Doc. 17 at 5, 17-1 at 2. However, Respondent contends that Fisher's BP-10 appeal was "rejected due to filing errors," and Fisher did not attempt to appeal at the BP-11 level.[4] Respondent asserts that this shows Fisher "failed to comply with the exhaustion requirements at the BP-10 and BP-11 levels." Doc. 17-1 at 2.

Fisher asserts that he exhausted administrative remedies at the BP-8, BP-9, and BP-10 levels and concedes he did not start or complete the BP-11 appeal before filing his Petition.

---

[4] Respondent's evidence of Fisher's failure to exhaust at the BP-10 level is minimal. Respondent relies on the declaration of Jason White, an attorney with the BOP's Atlanta Regional Office, and a printout of Fisher's SENTRY records. Doc. 17-1 at 1–2, 14–15. Mr. White states that Fisher's BP-10 appeal was "rejected due to filing errors," but White fails to explain what those filing errors were, and there are no documents showing when or why the supposed rejection occurred. Thus, it is impossible for the Court to fully assess whether Fisher sufficiently exhausted the BP-10 level of his administrative remedies. On this record, I find that Respondent has not met his burden to show Fisher did not exhaust at the BP-10 level. Ultimately, that conclusion is immaterial because all parties agree that Fisher did not exhaust at the BP-11 level, and that is where the Court focuses its attention.

Doc. 15 at 11.  However, Fisher argues should be excused from the exhaustion requirement and, in particular, the BP-11 appeal.  Fisher states: "Petitioner attempted to get a BP-11 [appeal form] but was denied access to one.  For these reasons the futility exception is applicable . . . ."  Id.  In his response to Respondent's Motion to Dismiss, Fisher elaborates on his "futility" argument.  There, Fisher states that all his administrative remedy requests have been denied based on the BOP's application of Program Statement 5410.01, which implements the FSA.  As a result, Fisher argues that further exhaustion of administrative remedies should not be required because the BOP would inevitably continue to deny the requests based on its application of the Program Statement.  Construing Fisher's pro se filings liberally, it appears Fisher makes two distinct arguments: (1) he should be excused from an exhaustion requirement because the BOP will deny all administrative remedy requests based on application of Program Statement 5410.01, which renders exhaustion pointless, and (2) exhaustion at the BP-11 level should be excused because Fisher tried to pursue a BP-11 appeal, but he was denied the proper form.  I address each argument.

To the extent Fisher is arguing that exhaustion of his administrative remedies should be excused because it would be "futile" for him to pursue them, that argument fails.  Fisher has not shown that any of the three circumstances identified in McCarthy are present here.  Fisher merely argues that the BOP relied on Program Statement 5410.01 in denying his BP-9 and BP-10 and in some other cases.  Doc. 19 at 2–3 (citing four other district court decisions).  Of the four other cases Fisher cites, two lack a correct citation and the Court could not locate the cases ("Collingsworth v. Neeley" and "Woodside v. Voutsihas"), and the other two were dismissed because the petitioner failed to fully exhaust administrative remedies ("Jackson v. Gabby" and "Markovich v. U.S.").  As this is the full extent of Fisher's argument, he has not demonstrated

that administrative remedies would be futile. Fisher has not shown that exhausting administrative remedies would cause "undue prejudice to subsequent assertion of a court action," that there is any doubt that the BOP "was empowered to grant effective relief," or that BOP was "biased or has otherwise predetermined the issue before it." <u>McCarthy</u>, 503 U.S. at 146–48. Moreover, Fisher has not shown any "extraordinary circumstances" that would support excusing the exhaustion requirement in this case.

I reach a different conclusion on Fisher's second argument. Fisher states he tried to obtain a BP-11 appeal form but was denied access to one. Doc. 1 at 12; Doc. 15 at 11. Respondent does not address Fisher's contention at all. Fisher is effectively arguing that administrative remedies were unavailable because prison officials thwarted his efforts to utilize administrative remedies. <u>See Ross</u>, 578 U.S. at 632. Applying <u>Turner</u>, Fisher has adequately alleged that administrative remedies were unavailable. Because Respondent has not address Fisher's contention, there is no factual dispute for the Court to resolve, and the Court must accept Fisher's representations as true. Therefore, Fisher was not required to pursue an appeal at the BP-11 level because that level of administrative remedies was unavailable. Accordingly, I find that Fisher's claims should not be dismissed for failure to exhaust available administrative remedies.

In sum, Respondent sufficiently demonstrates Fisher did not exhaust available administrative remedies for his Second Chance Act claims. However, Respondent fails to show Fisher did not exhaust available administrative remedies as to his FSA claims. Thus, the Court should **GRANT in part** and **DENY in part** this portion of Respondent's Motion. The Court should dismiss without prejudice Fisher's Second Chance Act claims as unexhausted. Fisher's FSA claims survive Respondent's Motion based on exhaustion grounds.

II.    **Respondent Fails to Show that This Court Lacks Jurisdiction Under the APA to Review Fisher's FSA Claims**

Fisher argues that the BOP did not properly credit his sentence under the FSA, resulting in a later placement in pre-release custody.  Doc. 15 at 6.  Fisher asks the Court to apply his earned FSA credits and set him for placement in a residential re-entry program.  Fisher asserts the BOP must follow the language of 18 U.S.C. § 3624(g), which states the Director shall transfer eligible prisoners to pre-release custody or supervised release.  Id. at 13.  Thus, under the statutory language, Fisher maintains the BOP should grant him placement into a residential reentry center.  Id. at 14.

Respondent asserts the APA precludes judicial review of an adverse agency action if a statute precludes review or if the agency action is in the agency's discretion.  Doc. 17 at 6 (quoting 5 U.S.C. § 701(a)).  Respondent also asserts that 18 U.S.C. § 3625 precludes this Court's review of the BOP's determination that Fisher is not entitled to placement in a residential reentry center.  Id. & at 7–8.

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action.  See 5 U.S.C. § 703.  However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626.  The Eleventh Circuit has explained § 3625 expressly precludes judicial review of agency adjudicative decisions but not rulemaking decisions, and courts generally lack jurisdiction as a result of § 3625 even in a § 2241 habeas action.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent

14

with the language of 18 U.S.C. § 3625."); <u>Martin v. Gerlinski</u>, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions.").  Where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution.  <u>See</u> <u>Webster v. Doe</u>, 486 U.S. 592, 597, 603 (1988); <u>Santiago-Lebron v. Fla. Parole Comm'n</u>, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); <u>Paradis v. Keller</u>, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); <u>Klatch v. Rathman</u>, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); <u>see also</u> <u>Rodriguez v. Johns</u>, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), <u>adopted by</u>, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

The Court recognizes Respondent's reliance on past decisions from this Court, but Respondent's argument is too general to provide the requested relief here.  While Fisher's claim is not precisely defined, he does argue that the BOP is not following the language of § 3624(g)(2), i.e., the BOP is not applying the mandatory "shall" of this statute (eligible prisoners "shall" be placed in prerelease custody); <u>see also</u> 18 U.S.C. § 3632(d)(4) (An eligible prisoner "shall" earn time credits).  Accordingly, at least some portion of Fisher's claim appears to be one that falls outside of the BOP's discretionary acts and is, therefore, subject to judicial review.[5]  This is not to say Fisher's FSA claims will be ultimately successful, only that the BOP's decision to not place Fisher in prerelease custody does not appear to have been made

---

[5]     Fisher also argues that the BOP made numerous errors in calculating his FSA credits.  It is unclear if Fisher contends the BOP made some factual error, made an error in one its discretionary decisions, or failed to properly apply statutory requirements.  It is also unclear how these alleged errors have impacted the BOP's application of credits, if at all.  To the extent Fisher is challenging a discretionary determination made by the BOP, such a challenge is likely not subject to judicial review.  If the Court adopts this Report and Recommendation, the parties will have additional opportunity to address this issue in their Answer and Reply.

within the confines of § 3624(g) and, thus, the APA does not preclude this Court's review of Fisher's FSA claims under § 3625. Torres v. Jenkins, Civil Action No. 1:23-cv-2885, 2024 WL 6473642, at *3 (N.D. Ga. May 1, 2024) (recognizing § 3625 precludes judicial review of the BOP's discretionary determinations but noting the Eleventh Circuit has indicated a court can review a petitioner's claim that the BOP's interpretation of a statute is unreasonable and constitutional claims, despite the language of § 3625); see also Briones-Pereyra v. Warden, Case No. 1:23-cv-01718, 2024 WL 4141380, at *2 (E.D. Cal. Sept. 12, 2024) ("Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the [BOP] acted contrary to established federal law, violated the Constitution, or *exceeded its statutory authority* when it acted pursuant to 18 U.S.C. § 3621." (emphasis in original) (quoting Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016)); Woodley v. Warden, USP Leavenworth, Case No. 24-3053, 2024 WL 2260904, at *2–4 (D. Kan. May 15, 2024) (reviewing relative merits of petitioner's FSA claims under §§ 3624 and 3632 without mention of APA).

Because Respondent has not shown that § 3625 precludes judicial review of Fisher's claims, the Court should **DENY** this portion of Respondent's Motion. If the Court adopts this Recommendation, Respondent should be prepared to file an Answer to Fisher's Amended Petition on his FSA claims only. Doc. 8.

## III. Respondent Does Not Show That This Court Lacks Jurisdiction Under the APA Regarding Fisher's Pre-Release Custody Claim

According to Respondent, Fisher is asking the Court to order the BOP to place him at a residential reentry center. Doc. 17 at 9 (citing Doc. 15 at 8). Respondent asserts the BOP has the discretion to designate the place of a prisoner's incarceration under 18 U.S.C. § 3621, so Fisher's claim fails.

Fisher asks the Court to set him for placement in a residential reentry center. Doc. 15 at 8. Fisher states if the BOP properly applied his credits, he would be immediately eligible for placement. Id. at 11.

The Court agrees that the BOP is to decide where a prisoner is to be housed and that decision is not subject to judicial review. 18 U.S.C. §§ 3621, 3625. However, Fisher's contention is more nuanced than a "simple" request that he be placed in a specific location. Instead, Fisher contends that the BOP has not properly credited his sentence under the FSA (and the Second Chance Act, but Fisher has not exhausted that claim) and, as a result, he has not been placed in prerelease custody, as § 3624(g) requires. See Woodley, 2024 WL 2260904, at *4 (noting, while the FSA requires transfer to pre-release custody for eligible prisoners, the BOP retains the discretion to decide the particular placement or facility); Williams v. Warden, FCI Berlin, ___ F. Supp. 3d ___, 2025 WL 2207024, at *3 (D.N.H. Aug. 4, 2025) (citing Woodley favorably for the position the BOP does not have discretion to delay or refuse transfer of an eligible prisoner to pre-release custody); but see Brenneman v. Salmonson, Civil Action No. 5:22-CV-7, 2025 WL 914352, at *1 (E.D. Tex. Mar. 26, 2025) ("[T]he BOP retains the discretion to determine whether to place Petitioner in another facility, transfer him to a [residential reentry program], or designate him to [home confinement].").  Again, this is not to say Fisher will succeed in his claim, only that the Court can review the BOP's decision not to place Fisher for pre-release custody as part of his FSA claim. The Court should **DENY** this portion of Respondent's Motion. If the Court adopts this Recommendation, Respondent should be prepared to file an Answer to Fisher's Amended Petition on his FSA claims only. Doc. 8.

IV.    **Leave to Appeal** *in Forma Pauperis*

The Court should also deny Fisher leave to appeal *in forma pauperis*.  Though Fisher has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Fisher's Amended Petition and Respondent's Motion to Dismiss and Fisher's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss and **DISMISS without prejudice** Fisher's Second Chance Act claims based on his failure to exhaust his administrative remedies. Fisher's First Step Act claims will remain pending, should the Court adopt this Report and Recommendation.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 9th day of September, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA